**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABEL DAHN, | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY, | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Abel Dahn (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA" and "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").  In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Upper Darby, PA.

3. Upon information and belief, Defendant SEPTA is a regional transportation authority with a location and corporate headquarters at 1234 Market Street, Philadelphia, PA 19107.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and

employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§

2

1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII, the PHRA and the PFPO.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging national origin discrimination against Defendant.

14. The Charge was assigned a Charge Number 530-2026-02791 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated February 10, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA and PFPO claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is foreign-born (Liberian).

3

21. On or about October 30, 2017, Defendant hired Plaintiff in the position of Bus Operator.

22. Plaintiff was well qualified for his position and performed well.

## THE NEW DISTRICT DIRECTOR DISCRIMINATED AGAINST FOREIGN-BORN BUS OPERATORS

23. In or around 2023, Kafi Burks (American-born) became the new District Director at Defendant.

24. Shortly after becoming the District Director, Burks initiated and carried out a pattern and practice of discrimination against foreign-born Bus Operators, including Plaintiff.

25. Upon information and belief, at least two (2) other foreign-born Bus Operators, including, but not limited to, Kabori Landry (Burkina Faso) and Chantell Last Name Unknown ("LNU") (Jamaica) were subjected to heightened scrutiny, disproportionate discipline, and termination by this Director in the year preceding Plaintiff's termination, while similarly situated American-born Bus Operators were not.

## PREVIOUSLY, PLAINTIFF WAS STABBED AT WORK AND HAD LEGITIMATE ONGOING SAFETY CONCERNS AS A RESULT

26. Previously in 2021, Plaintiff was stabbed while operating his bus by a passenger wearing a ski mask.

27. Because the assailant could not be identified, no arrest was made, leaving Plaintiff with ongoing and legitimate safety concerns.

## PLAINTIFF RAISED SAFETY CONCERNS TO BURKS ON MULTIPLE OCCASIONS, BUT BURKS DID NOT ADDRESS HIS CONCERNS

28. Following this violent assault, Plaintiff reasonably raised concerns to Burks on multiple occasions throughout his employment about safety, including requesting that individuals wearing ski masks not be permitted on his bus to reduce the risk of further violence.

4

29. Burks failed and refused to support Plaintiff's safety concerns, minimized the seriousness of the assault, and took no meaningful corrective action.

30. Burks informed Plaintiff that Defendant could not prevent passengers from wearing ski masks.

31. Plaintiff also reported that passengers frequently cursed at him and subjected him to verbal abuse.

32. Rather than addressing this misconduct, Burks claimed Plaintiff for instigating the passengers into their abusive behavior towards him.

## BURKS ADDRESS THE SAFETY CONCERNS OF AMERICAN-BORN BUS OPERATORS

33. In contrast, upon information and belief, Burks responded differently to similar safety and passenger-conduct complaints raised by American-born Bus Operators, including, but not limited to, Chuck LNU and "Hug" LNU addressing their concerns and not attributing blame to them.

34. Upon receiving their complaints of safety concerns, Burks proceeded to place them on a different route to address their concerns.

## PLAINTIFF USED PROFANITY ON AN EMPTY BUS

35. As a result of the ongoing fear, stress, and lack of institutional support following a violent assault, in December 2024, Plaintiff used profanity to vent his frustration after his bus was completely empty.

36. No passengers were present, no customers were affected, and no operational harm occurred.

## BURKS FALSELY CLAIMED PLAINTIFF USED PROFANITY TOWARDS A PASSENGER AND PROPOSED TERMINATION

37. Nevertheless, Burks seized upon this incident and proposed Plaintiff's discharge, an extreme and unprecedented response that was grossly disproportionate to the conduct at issue.

38. Burks falsely claimed that Plaintiff had been using profanity towards a passenger.

## BURKS DID NOT TREAT AMERICAN-BORN BUS OPERATORS SIMILARLY

39. Defendant's response was inconsistent with its treatment of similarly situated American-born Bus Operators, who were not proposed for discharge or subjected to similar discipline for comparable or more serious conduct.

40. Upon information and belief, in or around the end of 2023, Devon LNU repeatedly cursed at a passenger, but Burks did not disincline or terminate Devon for the incident.

41. In addition, in or around 2024, Kyle LNU got into a physical altercation with a passenger, who was required to seek medical treatment.

42. However, Burks did not discipline or terminate Kyle for the incident.

## PLAINTIFF WAS PLACED ON A LAST CHANCE AGREEMENT

43. Although Plaintiff was not terminated at that time, in or around December 2024, Defendant imposed a Last Chance Agreement ("LCA") on Plaintiff, an inappropriately harsh disciplinary action for the said behavior.

44. The imposition of the LCA constituted disparate treatment, as American-born Bus Operators, including, but not limited to, Devon and Kyle, were not subjected to LCAs for similar incidents, demonstrating discriminatory enforcement of workplace rules based on national origin.

## PLAINTIFF WAS ISSUED A TRAFFIC CITATION

45. Subsequently, on July 21, 2025, Plaintiff made a right turn at a red light at an intersection where no signage prohibited a right turn on red.

46. However, a SEPTA police officer issued Plaintiff a traffic citation in connection therewith.

47. Burks asserted that the mere issuance of a citation constituted a violation of Plaintiff's LCA, even though no finding of wrongdoing had been made and similarly situated American-born Bus Operators, including, but not limited to, Tamika LNU, were not disciplined for receiving contested citations.

## DEFENDANT TERMINATED PLAINTIFF FOR RECEIVING THE TRAFFIC CITATION

48. On July 21, 2025, Burks and Tawanda LNU, Senior Director, terminated Plaintiff's employment, citing the alleged LCA violation for receiving a traffic citation while operating a company vehicle.

## PLAINTIFF CONTESTED THE CITATION AND IT WAS DISMISSED

49. Importantly, Plaintiff contested the citation in court, and on September 30, 2025, a judge dismissed the ticket, finding it unsupported and without merit.

## DEFENDANT REFUSED TO REINSTATE PLAINTIFF

50. After the citation was dismissed, Plaintiff sought reinstatement through his union, as the sole basis for the alleged LCA violation had been nullified.

51. However, Defendant refused to reinstate Plaintiff, even after the legal predicate for his termination was eliminated.

52. Defendant's refusal to reinstate Plaintiff further demonstrates that the termination was not genuinely based on the citation, but rather was part of an ongoing pattern and practice of discrimination based on foreign-born employees.

7

53. Defendant's conduct reflects systemic disparate treatment based on national origin, including:

   a. Imposing harsher discipline on foreign-born Bus Operators;

   b. Ignoring or minimizing their safety concerns;

   c. Imposing Last Chance Agreements selectively; and

   d. Refusing reinstatement even after exculpatory judicial findings.

54. Defendant's stated reason for disciplining and terminating Plaintiff were false and pretextual and similarly situated American-born Bus Operators were treated more favorably under materially identical circumstances.

55. Defendant subjected Plaintiff to disparate treatment and unlawful termination because of his national origin in violation of Title VII, the PHRA and the PFPO.

56. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

### COUNT I – NATIONAL ORIGIN DISCRIMINATION
### <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

57. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

58. Plaintiff is a member of protected classes in that his national origin is Liberia.

59. Plaintiff was qualified to perform the job for which he was hired.

60. Plaintiff suffered adverse job actions, including, but not limited to termination.

61. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

62. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

63. Defendant discriminated against Plaintiff on the basis of his protected class.

64. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

65. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

66. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISCRIMINATION BASED ON NATIONAL ORIGIN
## PENNSYLVANIA HUMAN RELATIONS ACT

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (Liberia).

69. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISCRIMINATION BASED ON NATIONAL ORIGIN
## PHILADELPHIA FAIR PRACTICES ORDINANCE

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

71. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (Liberia).

72. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

9

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Abel Dahn, requests that the Court grant him the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the PHRA and the PFPO.

(j)    Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: May 11, 2026          By:   */s/David M. Koller*
                                  David M. Koller, Esquire
                                  Jordan D. Santo, Esquire
                                  2043 Locust Street, Suite 1B
                                  Philadelphia, PA 19103
                                  215-545-8917
                                  davidk@kollerlawfirm.com
                                  jordans@kollerlawfirm.com

                                  *Counsel for Plaintiff*